IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIRK A. BOAND, ) | |
| ) | 8:05CV354 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on plaintiff's appeal of the defendant's denial of his application for disability benefits. This is a proceeding under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Jurisdiction is invoked pursuant to 42 U.S.C. § 405(g). Plaintiff alleges a disability onset date of February 1, 2001, and he filed his application for disability benefits on May 5, 2003. The ALJ denied plaintiff's claim on January 18, 2005, and the Appeals Council denied the claim on review.

**Legal Standard**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering . . . his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

An administrative law judge ("ALJ") evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

2

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**Background**

At the time of his application, plaintiff was a 47-year-old male with no college education. He has been married for thirty years and has two children. His past relevant works includes engineering and maintenance-type jobs. He alleged he suffered from osteoporosis, severe pain, depression, pancreatitis, and severe sinus problems. Tr. 345 and 349. At his hearing plaintiff estimated he could lift and carry a gallon of milk for about twenty feet, stand for two to four minutes, sit for three to five minutes, spend about six or eight hours in a recliner, and spend fourteen out of twenty-four hours in bed. Tr. 366-67. He testified that at times he walked, drove and vacuumed somewhat. Tr. at 367-68. In 2002 he exercised three times a week as tolerated doing calisthenics and stretches. Tr. at 217. He has a certificate as an engineer that he received as a result of taking an engineering test at the Omaha Civic Center.

Dr. Kurt Gold diagnosed plaintiff with chronic pain syndrome, cervicalgia, persistent headaches, mid- and low-back pain, right thoracic outlet syndrome, chronic pancreatitis, and allergies. Plaintiff testified and Dr. Gold notes that plaintiff had been treated by him for pain since 1996. Tr. at 298. Plaintiff testified that he had spinal, lumbar, neck, back,

hip, wrist and ankle pain. Tr. at 349. Plaintiff also complained of chest tightness, anxiety, depression, problems with concentration, sleep and reflux. During the relevant time period, plaintiff took a number of medications for his pain. In May 2002, he reported loss of strength in his legs, fatigue, and inability to sleep. At that time he took Zanaflex, Clebrex, Methadone, and Actiq. In June 2002, Dr. Gold tried injections for the pain. He used Oxycontin which helped somewhat. In December 2002, he tried decreasing his pain medication, but that resulted in an increase in pain. He began having anxiety issues and received samples of Effexor. Dr. Gold noted that these symptoms were chronic. He also noted that plaintiff had no teeth. Tr. at 196. He further opined that plaintiff was not a "reasonable employment candidate." *Id.* Dr. Gold also stated that he would like to see plaintiff gainfully employed within six months of surgical intervention, but there must be stated support for medical care for that to occur. Tr. at 196-97. Plaintiff saw Dr. Gold again in August of 2003, and in September he described some improvement due to a Duragesic patch.[1]

In September 2003, Dr. Gold noted that plaintiff was doing better overall, had the pain under better control, and told plaintiff to try to increase his exercise to five days per week. Tr. at 192. However, by 2004 plaintiff complained of increased pain and showed decreased motion in his shoulder, and Dr. Gold noted that plaintiff was falling and tripping more. Tr. at 273-74. Dr. Gold determined that plaintiff was getting worse without surgical

---

[1] The court notes that the ALJ relied on occasional notes in the treatment records showing improvement. However, those notes did not indicate that plaintiff's diagnosis or prognosis had changed, merely that he had improved since the last visit. Further, there is no showing ever that plaintiff progressively showed improvement, and on the contrary, the record showed plaintiff did not improve over time. Accordingly, the court finds the ALJ's use of these references to improvement to be misleading and not to be supported by the overall evidence.

treatment, and found him temporarily and totally disabled. Tr. at 272. Plaintiff fell in June 2004, and reported increased pain again. Tr. at 310. He then saw Dr. Julie Slavik, a physical therapist. He had fallen and experienced significant pain. Plaintiff also suffers from severe sinus problems and has had five sinus surgeries.

In October of 2003, plaintiff saw Dr. Barbara C. Schuett, a clinical psychologist, for a consultative examination. She diagnosed plaintiff with severe, recurrent depressive disorder and panic attacks. In February of 2004, Dr. Gold gave plaintiff samples of an antidepressant and referred him to Joseph Rizzo, a psychologist, and to Dr. John Tubbs.

In March 2004, Dr. Gold noted that the plaintiff's shoulder and back were getting worse. A bone scan at that time showed lumbar degenerative disc disease. In September of 2004, Dr. Rizzo filled out a Residual Functional Capacity ("RFC") for the plaintiff. Dr. Rizzo opined that plaintiff was markedly limited in fourteen areas of functioning and had moderate limitations in his ability to carry out instructions, sustain an ordinary routine without supervision, and travel by public transportation. Tr. at 303-04. Dr. Rizzo also opined that even a small increase in the mental demands and responsibilities would cause the plaintiff to decompensate. Tr. at 302.

At the hearing before the ALJ, plaintiff testified that he went to the grocery store with his wife and to his doctor. His wife drove the seven blocks to the grocery store, as plaintiff could not walk that far. He was in pain and taking Dilaudid for the pain and Xanax for depression. He also testified and the evidence supports that he has eczema and suffered from fatigue. He had been in group therapy for his mental health issues. He testified that he spent fourteen hours a day in bed, Tr. at 366-68, and could only stand, sit and walk for short periods of time. He had to stand and move around during his hearing.

The ALJ first determined that plaintiff did not have one or more impairments that met or equaled the Listing of Impairments in 20 C.F.R. Part 404, Supt. P, App. 1.  The ALJ also determined that the plaintiff could not do his past relevant work but concluded he could do other work such as food and beverage order clerk, surveillance worker and assembler of eyeglasses and other sedentary work.  Tr. at 27 and 392.[2]

**Discussion**

*A.  Treating Physicians*

Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Joseph Rizzo, plaintiff's treating psychologist, regarding plaintiff's inability to work.  Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion.  *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).  "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'"  *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)).  The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.  *Hogan v. Apfel*, 239 F.3d at 961.

---

[2]The ALJ also stated that plaintiff's wife had health insurance for this treatment. Tr. at 26.  The record does not disclose that plaintiff's wife even worked, much less had health insurance.  The court finds no evidence in the record to support this statement by the ALJ.

6

As stated previously in this order, Dr. Rizzo determined that plaintiff is moderately limited in some areas and severely limited in fourteen areas.  The ALJ found that Dr. Rizzo had only seen the plaintiff on two different occasions.  The defendant argues the ALJ was entitled to disregard the RFC of Dr. Rizzo, as such assessment is entitled to little weight. *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997).  However, plaintiff points out that Kimberly Brown was part of a treatment team with Dr. Rizzo.  Ms. Brown saw plaintiff on several occasions in addition to the times Dr. Rizzo saw him.  The ALJ also determined that Dr. Rizzo's assessment of plaintiff's mental impairments was not supported by the record.  The ALJ found Dr. Barbara Schuett's and Dr. Rizzo's opinions differ.

However, the court notes that even Dr. Schuett, a consultative clinical psychologist, found plaintiff had anxiety disorder and recurrent severe major depressive disorder. Tr. at 177.  These opinions are consistent with Dr. Rizzo's findings and inconsistent with the conclusions of the ALJ.  In addition to the RFC evaluation by Dr. Rizzo, Dr. Rizzo also sent a letter discussing plaintiff's condition and symptoms.  Tr. at 298-99.  The court finds the ALJ failed to give appropriate weight to the treating doctors.  Dr. Rizzo's determination is supported by the objective evidence and by plaintiff's testimony as well as consistent with the consultative examiner's conclusion.  The ALJ's conclusory statements are not supported by substantial evidence and he erred in not giving due deference to the treating physicians in this case.

### B.  Vocational Expert - RFC

The ALJ determined that plaintiff could not return to his past relevant work.  Accordingly, the ALJ used the testimony of a vocational expert to determine whether plaintiff could perform other jobs in the economy.  To assist an ALJ making a disability

determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

     Plaintiff contends that the ALJ failed to make an assessment of his mental residual functional capacity. The ALJ determined that plaintiff had only mild restrictions or difficulties with regard to his mental functioning. Tr. at 26. Given both the treating and

consultative examiners' findings in this regard, the court agrees with the plaintiff. There are no contrary medical opinions in the record. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). The ALJ did not include any severe mental impairments or pain in his determination based on the hypothetical questions he posed to the VE. Tr. at 387-88.

Judith Harper testified as the vocational expert. The ALJ asked her to assume plaintiff could do sedentary exertional activities, could occasionally push or pull or climb stairs, and could not perform work with repetitive next extensions. Tr. at 387-88. The VE then testified that there were jobs such as food and beverage order clerks, surveillance system monitor, final assembler of eyeglasses, ticket seller, facility rental clerk, furniture rental consultant in the light and sedentary categories that the plaintiff could do. Tr. at 387-92. The ALJ added a restriction on vibratory tools and ability to carry out short and simple instructions. Tr. at 396. The VE testimony remained the same. Tr. at 396. However, when plaintiff asked by the VE to consider all of his complaints and the restrictions set forth by Drs. Gold and Rizzo, the VE testified there were no jobs that plaintiff could perform. Tr. at 397. The court finds the ALJ substituted his opinion for that of the treating physicians. The mental impairments and the evidence of severe pain should have been considered by the VI. Accordingly, the hypotheticals are not substantial evidence so as to support the determination by the ALJ.

### *C. Allegations of Pain*

Plaintiff argues that the ALJ failed to adequately consider his allegations of pain. The claimant contends the finding is in error because the ALJ failed to follow the *Polaski* standard in evaluating the claimant's subjective complaints of pain. The standard, in the

Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.   the [plaintiff's] daily activities;
> 2.   the duration, frequency and intensity of the pain;
> 3.   precipitating and aggravating factors;
> 4.   dosage, effectiveness and side effects of medication;
> 5.   functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaksi v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original).  "Pain is recognized as disabling when it is not remedial and precludes claimant from engaging in form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability."  *Cruse v. Bowen*, 867 F.2d 1183, 1183 (8th Cir. 1989).

"Not all pain reaches a level [at] which is disabling.  The claimant's level of care is not consistent with an individual who alleges the severity of her complaints."  *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).  "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the

10

inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

The claimant's subjective complaints of pain are consistent with objective tests, the nature of his disorder, and eyewitness testimony, as previously set forth herein. After a review of the evidence, the court finds that the ALJ failed to properly consider the claimant's subjective complaints of pain, and the objective medical evidence, combined with the claimant's daily activities, medical treatment and medication in determining the credibility of the claimant's complaints. The record supports plaintiff's complaints of pain as reported in 2001 and 2002 to Dr. Gold and as supported by the findings of Dr. Gold. Further, plaintiff has taken significant pain medication over the years. The record shows plaintiff has taken Zanaflex, Clebrex, Dilaudid, Bextra, Methadone, Percocet, Oxycontin, Lorcet and Actiq for pain and stomach issues. Dr. Gold even notes that medications are "merely covering his symptoms." Tr. at 225. The physical therapist noted in April of 2003 that plaintiff had difficulty getting out of the chair and onto the table. Tr. at 205. The counselor noted that plaintiff appeared to have pain. Tr. at 281-82. The psychologist noted sleep problems because of pain. Tr. at 176. By August 31, 2004, Dr. Rizzo found marked deficiencies in plaintiff's concentration and pace with continuing episodes of longer decompensation. Tr. at 301. The evidence overwhelmingly supports plaintiff's complaints of pain.

The court finds the ALJ failed to accord appropriate weight to the findings of plaintiff's treating physicians; failed to include relevant evidence of plaintiff's physical disabilities, plaintiff's pain, and plaintiff's mental symptoms when posing hypotheticals to the VE; and failed to consider plaintiff's allegations of pain, which are clearly supported by the record.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000). The court determines that the record overwhelmingly supports a finding of disability. Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED that the judgment of the defendant is reversed and this case is remanded for an award of benefits. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 1st of December, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge